Good morning, Your Honors. May it please the Court, Cynthia Hahn for Appellant Jose Reyes v. Villa-Lara. I want to start today with the Shepard Taylor analysis of the conviction which the Court found to be an aggravated felony and enhanced him 16 levels for, frankly, the Nevada Revised Statute, Section 453.3385.1, punishes actions that are not drug trafficking, i.e., it punishes knowingly or intentionally in actual or constructive possession of any controlled substance if the quantity is between 4 and 14 grams. That's it. There is no intent to distribute in the statute. And what he pled to was, both in the information with which he was charged and in the judgment of conviction, it said that he pled guilty to possession of a trafficking quantity of controlled substance of 4 to 14 grams, 2-wit cocaine. There is no allegation in either the information or the judgment of conviction that this gentleman intended to traffic in the substance. Excuse me. Now, under the guideline, the guideline is pretty clear. Under the application note 201.2, application note 1BIII, that a drug trafficking offense, and I will leave out the part that actually deals with drug trafficking and go to the part that says the possession of a controlled substance. Okay. He meets that part. He did have possession of a controlled substance. But it goes on to say, with the intent to manufacture, import, export, distribute, or dispense, there's no language in either the information or the judgment of conviction to that effect. It merely says he possessed a trafficking amount, 4 to 14 grams. That's, I see, pretty clear on the guideline, the guideline for a 16-level enhancement. You can't infer intent from the word trafficking? Not in this case, Your Honor, because it, okay, if you go to, like, Madera, Madera, which is what the government cited, there they found that the trafficking of 28, possession of 28 or more grams, which is seven times the minimum amount under the Nevada statute, this was a Georgia statute, section 16-13-31E, they found there that possession of 28 or more grams was the equivalent of the intent to distribute. There has been no case that has found that similar in Nevada. As a matter of fact, I was in the Nevada statute, which dealt with another Nevada statute, NRS 453.337.1, and the reason that the court there found that he did intend to traffic was because it was possession for the purpose of sale. And the court found they were very comfortable with the fact that those were the language of the statute. Well, that was the title of the statute, possession for the purpose of sale. And they were very comfortable with the fact that it was possession with an intent to distribute or disperse, so it fit very comfortably under the guideline definition. Here we have nothing about intent to distribute. You can just possess it, and under the guideline, you just don't fit it. You have to have some kind of intent to distribute, disperse, dispense, some reason, some indication that that's what you're doing. To carry on Judge McKeown's question to you, can we assume here that the legislature intended that you could infer from having this amount that there was an intent to traffic and not simply for personal use? If that were so, Your Honor, I think there would have been some case law out there that, like in Madeira, Madeira, where they did say we find that 28 grams or more satisfies the intent. There's nothing there like that for this. Well, that issue is before us today. Right. Well, I think we just have to look at the guidelines. It has to be an intent. Under the Nevada statute, it is definitely overbroad under Taylor. It is categorically, formal categorical approach, overbroad, because there is no intent. So you go to what he was convicted of, what he pled to. And, again, no intent, just possession, possession of 4 to 14 grams. Now, we all know under Federal law, 4 grams is a misdemeanor. And, again, now we're starting to roll over into the Leocal. And I know from reading these things, Judge Hugg has done a lot on these possession cases being aggravated felonies. I submit that Mr. Villalora is, yes, there's no doubt he was convicted of a felony. He won three years for, under the statute, for that particular crime. But I would have to, and I'm going, I know I'm swimming uphill here. And excuse me, before I forget, I want to reserve two minutes for rebuttal. I am definitely a salmon swimming upstream on this one. But I would like the Court to take another look at the use of 21 U.S.C. 802.13, which has been used time and again to find an aggravated felony, because at 21 U.S.C. section 802.13, it says, A felony is any Federal or State offense classified by applicable State or Federal law as a felony. If you take out the words Federal out of there, what you get is that 21 U.S.C. 802.13 is stating that a felony is any State offense classified by State law as a felony. That violates Taylor. Taylor made it very clear you don't get to go to State law to classify an offense as a felony. They couldn't have been clearer about that. I have a quote here from Taylor that they say, and they cited to Dickerson v. New Banner Institute, Inc., 460 U.S. 103-119-120-1983. Federal laws are not to be construed so that their application is dependent on State law because the application of Federal legislation is nationwide, and at times the Federal program would be impaired if State law were to control. I see I am on the yellow light, and I'd like to reserve, but I'll come back to that subject. Thank you. Mr. Giffen, may it please the Court. My name is Robert Don Giffen. I'm an assistant U.S. attorney from Reno, Nevada. And the first thing that I would like the Court to consider in this is that the defendant never really made a specific objection. They stood up initially and said, Your Honor, we said that the statute is overbroad. Did not discuss, go into any great detail as to why it's overbroad. No explanation. Judge McKibben at the district court level took a look at it and said, Counsel, it seems to be an open case. Would you agree? Well, I'll just submit it on what I've previously stated, and that was that. Now that we're here on appeal, we go into the greater detail over why it's overbroad. I agree that there is nothing in the Nevada statute that lists out the words intent to distribute. However, I do, however, the title of the statute itself is trafficking. I believe that what the government is now asking this Court to do is to follow a similar analysis that the Eleventh Circuit did in Madera Madera in finding that trafficking itself, in this case, is inferred. Was that under Taylor, though? Madera Madera didn't do a Taylor analysis to it? My recollection is that in Madera Madera there was a discussion of Taylor very briefly. In fact, I think it discussed why Taylor did not disqualify it overall. And I don't have the Madera case right here at my hands, but in my mind I recall reading something about Taylor being discussed in Madera. However, I do want to point out that when the statute, when Madera came out, this was all post-Taylor and would be contemplated. I do ---- I don't think they did a Taylor analysis. I'm looking at the Madera Madera case. My only thought is whatever they did is not what we have to do. Do you agree we have to look at this under Taylor? I think, as Taylor stated, is that when you're looking at the statute, does it include conduct that goes beyond what is in the statute? And I don't believe that, or excuse me, conduct that is what is beyond under what is contemplated. And I don't think that what is happening here is the same with Madera Madera in adopting their rationale in saying trafficking infers an intent to distribute. And even though it is not specified in the statute, the Nevada statute mirrors sort of what happened in Georgia in that there is no ---- their intent to distribute is not discussed at all. And while I guess Taylor is not cited, a Taylor analysis is somewhat done because they do discuss, hey, we don't have intent to distribute as listed in the statute. However, Georgia has drawn the line. Now, the line is ---- I guess the thing is in Georgia they said it was drug trafficking and it actually said that any person who knowingly sells, manufactures, delivers, dah, dah, dah, dah, commits the offense of trafficking. So you had the intent and the selling and the trafficking all in the statutory language. And in our case, and this is trying to figure out where this fits between zero and Madera. I understand. We don't have the word trafficking in the statute. In the title. In the title. And we don't have the sale in this particular statute. Is that correct? Yes, Your Honor. We have it in another one. Yes, Your Honor. We don't have the words for sale or intent to distribute as listed in the body of the statute. It wasn't missing both intent and sale and trafficking from the statute. Correct, Your Honor. And I guess what the government is really having to rely on is that what we have is that this is not charged as a simple possession. It is charged as trafficking. Is there a separate crime in Nevada for simple possession? There is, Your Honor. There is, Your Honor. And what they're ---- what Nevada has done is that in its prerogative it has drawn the line at four grams. At four grams is considered a trafficking offense. Now, while it pales in comparison to what Georgia did, Georgia had 28 grams. But four grams, that is where the Nevada legislature said that is enough for us to consider that to be a trafficking offense. Well, under Nevada law ---- Well, you're telling us it's a matter of logic or is there legislative history where they said if you have more than this amount, that is a trafficking offense as opposed to simple possession? Your Honor, it would be just as a matter of ---- just as a matter of logic in that because the way the statute is set out, the first element is basically it has to be at least four grams. Yes. And just so simply, you know, to argue a legislative history, no, that's ---- I'm not arguing that to the court. But what I just said is a matter of logic. One other possible interpretation could be that for the lesser amount or lesser than four grams, the punishment would be X. If there was more than four grams, the punishment would be Y for possession. I would agree, Your Honor, with the exception that the way the statute is laid out, that the bottom rung is four grams. So if the ---- so anything below four grams would be a completely different statute. In this case, we have someone who's ---- once they reach four grams or four to, I believe it's ten grams, four to ten grams, all of a sudden they are eligible for prosecution for trafficking. Is there a greater punishment for more than ten grams? There is, Your Honor. There is, Your Honor. And it's listed under the same statute. The way the statute is laid out is that they ---- and it breaks it down to a punishment. And it's a ---- excuse me, it's 14 grams. If four grams or more but less than 14 gives a Category B felony for 14 or more but less than 28, then the third is for 28 more for a Class A felony in the state of Nevada. And ---- but anyway, that all falls under the statute for trafficking in controlled substance within the state of Nevada. That leads to the question I had. Under Nevada law, what is the significance of the heading of the statute as opposed to the wording of the statute? The ---- and that's where I have the, I guess, Your Honor, I guess that's where I have the, I guess that's where I'm swimming upstream now in the ---- I'm having to rely on ---- The heading has no effect, really, under Nevada law, does it? Yes, Your Honor. And that's the actual wording of the statute. Yes, Your Honor. And I'm basically having just to rely on, you know, the Nevada legislature has called when you have this much drugs, it is trafficking. However, I'm still ---- You can't really say that, though. It says we've got those ---- maybe it was poorly drafted, I think it was, but any person who intentionally sells, manufactures, delivers or brings to the state, that's one separate. And then says or is knowingly or intentionally an actual constructive possession, that is independent from the other part of it. It says or who knowingly, intentionally or actually constructive possession. That doesn't say anything about trafficking, selling, delivering, anything. No, sir, it does not. And that's the horn's dilemma that I'm stuck on in that ---- I mean, it's not really your fault or anything. It's just the Nevada drafted its statutes, and then the Federal has its own statutes. And it wasn't like they were drafted together so we can kind of try to read them together. It's just like this is their statutory regime, and then here's this Federal one. We've got to stick this in the Federal regime. Yes, Your Honor. Yes, Your Honor. Yes, Your Honor. And that's really where I'm stuck at. And it's at the or. At that or is where I'm just asking the Court to follow along the same arguments or the same theory that the Eleventh Circuit did. We've got a trafficking statute where Nevada said, hey, at a minimum of four grams,  or you're in possession of this greater amount. If you're in possession of a lesser amount, you're charged with a lesser statute. But because we consider, you know, if we don't catch you doing the buy or the sell or hauling it across state lines, we're going to consider you a drug trafficker when you bring in a greater amount or when you're found in possession of a greater amount of a narcotic. And I see my time is up. And that's based on an unspoken inference. Yes, sir. Yes, Your Honor. Thank you. Thank you. Thank you, sir. If Your Honors are inclined to go with my analysis under Shepard Taylor, I wouldn't want to waste any more time on it. I would like to jump to my 802.13 argument. Well, I can't tell you what we're going to do. If there's any more questions, we don't know. We can't tell you from here. You're going to have to wait until you read the opinion. Yeah. He'll have to take your chances on that. But anyway, I just want to distinguish Ibarra-Galindo because that came out before the amendment of 632 was stratified to a 1.2 and to 4.8.12.16 level enhancements, depending on that was my only thing. I wanted to clarify that. The other thing I wanted to say was that the attorney below did speak to Taylor. Taylor has been around since 1990. I think everybody, when they talk about the Supreme Court case of Taylor, knows what Taylor is about. And he did go into, if you go to excerpts of record 23 to 25, which is his sentencing memorandum, and at sentencing itself, excerpts of record 58 to 60, he does discuss Navidad-Marcos and Taylor in a little more detail. Anyway, the thing is, is that this was a 16-level enhancement that should not have been under the guideline application note 1BIII. And the Nevada statute just doesn't meet the requirement of intent. My second thing that I really want to talk about, which I'm not going to have a lot of time to do, is that ---- The guidelines are not mandatory, just advisory. And the judge is looking at this from the standpoint of reasonableness. Why isn't that enhancement reasonable? Well, first of all, the first thing you have to do under Booker is look at the guidelines and make your calculations. And those calculations have to be correct. You don't have to follow that. No, no. But there's still a de novo review of whether the court followed the guidelines properly. And here he did not. So I don't even know if we get to Booker, because this is a strict did he follow the ---- Recent case law has said that even under Booker, there is still a separate de novo review of whether the guidelines were applied correctly. And in this case, they definitely were not. But if you don't apply them correctly and they're only advisory, what's the significance of that? This Court has found that it's very ---- I'm not going to argue with the Court on that. Did the judge here think that it was mandatory to make that jump, the 16? No, he did not. He said it's advisory. I'm not bound by the guidelines. No, he did not. Which is ---- No, no. Well, he did the sentencing post Booker, but he never did a 3553A analysis or anything of that nature. He just said under Ibarra-Galindo, your argument is specious to the defense attorney. And that's why I say Ibarra-Galindo was before the amendment to the guideline, which made those 4, 6, 8, 12 differentiations. And so I think the reliance on Ibarra-Galindo was a little off-center here, considering what the guidelines say now. He strictly followed the guide ---- he followed the guidelines, but he was aware of Booker, but he did not discuss Booker. Thank you. Unless there's other questions. The case is submitted. Thank you both for your arguments. United States v. Villalobos is submitted.
judges: Hug, Alarcon, McKeown